| | | |
|---|---|---|
| BRIAN SHANE CALDWELL | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | No. 3:05-cv-200 |
| | ) | *Phillips* |
| | ) | |
| VIRGINIA LEWIS, Warden | ) | |
| | ) | |
| *Respondent*. | ) | |

## <u>MEMORANDUM</u>

This is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Brian Shane Caldwell ("Caldwell"). The matter is before the court on the motion to dismiss filed by the Attorney General for the State of Tennessee on behalf of the respondent, and Caldwell's response thereto. For the following reasons, the respondent's motion to dismiss will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**.

# I.    Standard of Review

Under Rule 8 of the RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. If the record shows conclusively that Caldwell is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986); *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983).

# II.    Factual Background

The Attorney General has provided the court with copies of the state court record on direct appeal and in post-conviction proceedings. [Court File No. 6, Addenda 1-14]. Caldwell was convicted by a jury in Knox County, Tennessee, of first-degree felony murder and first-degree burglary; he was sentenced to concurrent prison terms of life and ten years, respectively. The convictions were upheld on direct appeal. *State v. Caldwell*, No. 1176, 1988 WL 94393 (Tenn. Crim. App. September 13, 1988) [Addendum 5], *perm. app. denied, id.* (Tenn. December 12, 1988) [Addendum 7].

The Tennessee Court of Criminal Appeals, on direct appeal, gave the following summary of the evidence:

We summarize the State's proof: The record reveals that the defendant rented an upstairs apartment from the victim, Lucille Gibson, age 67. His girlfriend, Diana Adkins, and her brother, John Adkins, helped him move into the apartment on Saturday afternoon, November 2, 1985.

After the defendant moved, he and the victim argued about hot water and the moving of furniture. The victim accused the defendant of taking money and keys belonging to her. As a result, the defendant vacated the premises. The defendant and the victim had an argument because the victim would not return all of his rent money to him.

After the defendant left the premises, he told John Adkins that he had taken Ms. Gibson's keys and thrown them in some bushes. The defendant also told John Adkins that he intended to rob Ms. Gibson and asked Adkins to assist him, but Adkins refused.

On Sunday morning, November 3, 1985, the defendant telephoned the Adkins' home and told Adkins' mother that he needed to speak with Adkins about a "matter of life and death." Later that morning, Adkins met the defendant and the defendant told Adkins that he had killed Ms. Gibson. The defendant told Adkins that he "hit her a few times, tied her up, and then she was dead." The defendant also told Adkins that he stuck something black in the victim's mouth. The defendant indicated that he was going to "skip town."

On the afternoon of that same Sunday, November 3, police responded to a call from the victim's neighbors. The police found Ms. Gibson dead, lying on her bed with her arms above her head and her hands and feet bound. The victim's house had been ransacked. A grandfather clock, which had been disturbed, had stopped at 11:20.

An autopsy revealed that Ms. Gibson died of asphyxia (suffocation), secondary to smothering and choking. She had sustained multiple bruises on the nose, face, and both arms. Her mouth had been closed with some degree of force and a hair was present at the back of her oral cavity. A black plastic nightcap, found under a chair in the victim's bedroom, was determined to have blood on it. An examination of the defendant's blue jeans, under shirt, and socks, revealed the presence of human blood of an undetermined origin. A shoe print, found on a peanut jar in the victim's bedroom, was consistent with a pattern of the prints on the defendant's tennis shoes.

3

Diana Adkins testified that on Saturday night, she and the defendant had returned to Ms. Gibson's house at 9:30 or 10:00 o'clock p.m. The defendant told Diana Adkins that he intended to recover the rent money. After sitting on the steps in the hallway for ten or fifteen minutes, the defendant stated that he was "tired of waiting." He entered the victim's door, grabbed the victim and covered her mouth. The defendant hit the victim in the head with the back of his hand and stuck the black nightcap in her throat. After tying the victim's hands and feet, the defendant went through the house looking for money. The defendant took a television set, some hot rollers, and a curling iron and hid them in some bushes.

Diana Adkins further testified that after leaving the victim's home, she and the defendant went to a friend's house where they spent the night. Diana Adkins left before the defendant, but met him later that morning, when he asked her to get her brother, John Adkins. When John Adkins arrived, the defendant told him about killing Ms. Gibson and indicated his intention to leave town. Diana Adkins testified further that, prior to the preliminary hearing in this case, the defendant asked her to leave the state so she could not be compelled to testify against him. When the case came to trial, the defendant told the witness, Diana Adkins, to say that she committed the murder because she was a juvenile and could not be prosecuted.

The defendant presented the testimony of Rhonda Knight, who testified that on November 4, 1985, Diana Adkins told her that it was she who stuck the nightcap in the victim's mouth. Janice Savage testified that after the defendant was arrested, she overheard Diana Adkins tell Sharon Smith that "Once it got started it was easy, and everything went smooth." Helen Newby testified that Diana Adkins' reputation in the community for truthfulness was not good.

*Id.*, slip op. at 1-4, 1988 WL 94393 at **1-2.

Caldwell next filed a state petition for post-conviction relief, which was denied on the merits after an evidentiary hearing, and the Tennessee Court of Criminal Appeals affirmed. *Caldwell v. State*, No. E2003-02122-CCA-MR3-PC, 2004 WL 2544685 (Tenn. Crim. App. September 28, 2004) [Addendum 12], *perm. app. denied, id.* (Tenn. March 21, 2005) [Addendum 14].

4

On direct appeal, Caldwell challenged the sufficiency of the evidence to support his conviction. He does not raise that issue in his pending habeas corpus petition, other than in the context of his claim of actual innocence. In post-conviction proceedings, Caldwell alleged he was denied his right to the effective assistance of counsel; he pursued on appeal two claims of ineffective assistance of counsel. In support of his habeas corpus petition, Caldwell alleges fourteen grounds for relief, including 71 claims of ineffective assistance of counsel, 23 claims of judicial error, and 26 claims of prosecutorial misconduct. The Attorney General contends the respondent is entitled to judgment as a matter of law based upon procedural default and upon the findings of the Tennessee state courts.

III.    Procedural Default

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review.").

Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Caldwell cannot file another state petition for post-conviction relief. TENN. CODE ANN. § 40-30-102(a). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

Caldwell alleges the following grounds for relief: (1) unconstitutional selection of the grand and petit juries; (2) false representations to the grand jury; (3) insufficient indictments; (4) failure to disclose exculpatory evidence; (5) failure to disclose all deals with state witnesses; (6) prosecutorial misconduct; (7) knowing use of perjury; (8) use of false and fabricated evidence by the government; (9) prejudicial pretrial and trial publicity; (10) erroneous and void convictions / actual innocence; (11) ineffective assistance of counsel; (12) errors by the trial judge; (13) denial of equal protection; and (14) cumulative error.

As noted, none of these issues were raised by Caldwell on direct appeal. The claims were raised in his *pro se* amended and supplemental petition for post-conviction relief. [Addendum 8, Technical Record in Post-Conviction Proceedings, pp. 44-110]. The only issue raised on appeal in post-conviction proceedings, however, was as follows:

> THE TRIAL COURT ERRED IN NOT FINDING THAT PETITIONER'S TRIAL COUNSEL'S ADMITTED DEFENSE STRATEGY AT TRIAL, THAT THE DEFENDANT WAS PRESENT AT THE CRIME SCENE BUT NOT THE PRINCIPAL ACTOR, WAS DEFICIENT AND INEFFECTIVE ASSISTANCE OF COUNSEL, AND PREJUDICIAL TO THE OUTCOME OF THE TRIAL, AND, THAT THE POST-CONVICTION PETITIONER IS ENTITLED TO RELIEF FROM HIS CONVICTION AND SENTENCE.

[Addendum 10, Brief of Appellant, p. 8].

The Tennessee Court of Criminal Appeals considered this issue to be two claims, namely ineffective assistance of counsel based upon a lack of a clear defense strategy and ineffective assistance of counsel by admitting Caldwell's presence at the scene of the crime. *Caldwell v. State*, slip op. at 3, 2004 WL 2544685 at *2. Accordingly, all other claims raised in the habeas corpus petition were procedurally defaulted.

7

Caldwell seeks to excuse his default based upon his attorney's failure to pursue the claims on appeal following the denial of post-conviction relief. Attorney error will constitute cause only if it rises to the level of constitutionally ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman v. Thompson*, 501 U.S. 722, 755 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). *See also McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

Ineffective assistance of counsel cannot violate the constitution, however, where there is no Sixth Amendment right to counsel, *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982), and a post-conviction petitioner has no constitutional right to counsel. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Murray v. Carrier*, 477 U.S. at 488. Accordingly, Caldwell's allegations of attorney error cannot suffice as "cause" to excuse his procedural default. *See Coleman v. Thompson*, 501 U.S. at 752. *See also Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 426 (6th Cir. 2003) ("To the extent Gulertekin may assert ineffective assistance of her post-conviction counsel as cause for the procedural default of her claim for ineffective assistance of trial counsel, she is barred by the fact that she has no constitutional right to such counsel. Thus, she is unable to demonstrate cause for the procedural default of this claim."). *See also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

8

With respect to the remaining claims for relief, the Attorney General contends the respondent is entitled to judgment as a matter of law based on the findings of the Tennessee state courts.

IV.    State Court Findings

Pursuant to 28 U.S.C. § 2254(d), Caldwell may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct and Caldwell must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively

unreasonable." *Id.* at 409. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

V.    Discussion of Remaining Grounds for Relief

*A. Ineffective assistance of counsel.*

In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), Caldwell must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular

case. *Id.* at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.* at 691-92.

As noted, Caldwell preserved two claims of ineffective assistance of counsel: failing to develop a defense strategy and acknowledging his presence at the crime scene. The trial court considered and rejected these claims after an evidentiary hearing.

> Petitioner also claims ineffective assistance of counsel on behalf of his two trial counsel. While the Petitioner did not testify as to any specific shortcomings, his post-conviction counsel did vigorously cross-examine them during the hearing. Petitioner complains that trial counsel's efforts to implicate Diana Adkins, the state's eyewitness, as the true culprit was misplaced. They claim that defense counsel should have taken a different trial tactic, specifically that Mr. Caldwell was not present at the crime scene. Petitioner was adamant that the only evidence of his presence at the scene was the testimony of Diana Adkins and trial counsel's opening statement indicating he was present. A review of the testimony at trial, however, also establishes that John Adkins testified as to an admission made to him by the Petitioner that not only was the Petitioner present, but was responsible for the death of Ms. Gibson. In addition, a review of the record supplies overwhelming circumstantial evidence that puts Mr. Caldwell at or near the scene of this crime at pertinent times. Further, Mr. Caldwell had acknowledged to his trial counsel that he was present at the scene, [and] attempts by them to [elicit] testimony to the contrary would have been unethical and inappropriate.
>
> ...

Trial counsel testified that their approach to this case was to establish that Diana Adkins was the truly responsible party for the death of Ms. Gibson. It is unquestioned that they vigorously cross-examined her and established inconsistencies in her prior statements. Indeed, the jury returned a note during deliberation asking if they could also find Ms. Adkins guilty of some transgression.

This court is of the opinion that trial counsel in this case adequately prepared and presented a defense on behalf of Mr. Caldwell. We do not judge trial counsel's action in the cool reflection of 20/20 hindsight, but rather determine whether trial counsel is performing in an effective manner to the extent that one can rely on the outcome of the proceeding.

[Addendum 8, Technical Record in Post-Conviction Proceeding, Memorandum Opinion and Order, pp. 173-75]. In doing so, the trial court noted that *Strickland v. Washington* set forth the standard of review. *Id*. at 176.

The Tennessee Court of Criminal Appeals also considered and rejected these claims:

This case boiled down to whether the jury believed the State's eyewitness to the murder, Diana Atkins. The Defendant does not contend that his lawyers were ineffective in their attacks on her credibility. Rather, his chief complaint is that they bolstered her testimony by admitting during opening statement that he was present at the crime scene. We agree that, where the theory of defense is to force the State to carry its burden of proof, any admission of facts supporting an element of the crime during a defendant's opening statement may be unwise and potentially deficient representation. However, it is clear in this case that the jury accredited Ms. Atkins' testimony that the Defendant participated in killing the victim, thereby implicitly finding that the Defendant was present at the scene. We have no difficulty concluding that the jury would have reached this same result even if defense counsel had said nothing during opening statement other than, "You should not believe a word the State's witnesses say." Ms. Atkins' testimony was corroborated by other evidence, and the Defendant had no alibi. In short, while the Defendant's lawyer should not have admitted during opening statement the Defendant's presence at the scene of the crime, the Defendant has failed to demonstrate that he was prejudiced thereby. Accordingly, his claim of ineffective assistance of counsel on this ground is without merit.

With respect to trial preparation, the Defendant has offered no proof of how any additional time and/or investigation and/or meetings with the Defendant would have altered the verdict in his favor. At the post-conviction hearing, the Defendant put on no additional witnesses that should have been called at trial, but were not, nor did he produce any physical evidence that his lawyers should have introduced at trial, but did not. The Defendant basically contends that we should view his lawyers' trial preparation as inadequate based simply on the number of hours they spent. We decline to adopt, however, such a formulaic approach to determining the effectiveness of legal representation.

Similarly, we reject the Defendant's contention that his lawyers were ineffective because they lacked a "clear defense strategy." In some criminal cases, especially where the defendant has admitted to his lawyers his presence at the scene, the only strategy available is "the State cannot prove its case beyond a reasonable doubt." That was the strategy adopted in this case and defense counsel were so effective in impeaching Ms. Adkins that the jury wanted to convict her of some offense: in spite of the fact that she had never been charged with anything. The Defendant has failed to demonstrate what else his lawyers should have done to attack the State's case, and has therefore failed to establish that he was prejudiced by his lawyers' performance.

We agree with the trial court that the Defendant has failed to prove that he received the ineffective assistance of counsel at trial. Accordingly, we affirm the judgment of the trial court.

*Caldwell v. State*, slip op. at 5, 2004 WL 2544685 at **4-5. The appellate court likewise

noted that the standard of review is the two-prong test set forth in *Strickland v. Washington*.

*Id*., slip op. at 4, 2004 WL 2544685 at *3.

Caldwell has failed to rebut, by clear and convincing evidence, the findings of the

state courts and they are presumed correct by this court. In addition, this court has reviewed

the transcripts of the trial and the post-conviction evidentiary hearing [Addendum 2,

Transcript of the Evidence, volumes I-VI; Addendum 9, Transcript of the Evidence, volumes

1-2; respectively]; the foregoing findings by the Tennessee state courts are supported in the

record. That being so, this court concludes that the appellate court's determination that Caldwell received the effective assistance of counsel was neither contrary to, nor did it involve an unreasonable application of, federal law as established by the U.S. Supreme Court in *Strickland v. Washington*. Accordingly, Caldwell is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel.

## B. Sufficiency of the Evidence

To the extent Caldwell challenges the sufficiency of the evidence in the context of his claim of actual innocence, the issue lacks merit. In a federal habeas corpus proceeding in which a state prisoner challenges the sufficiency of the evidence supporting his conviction, the petitioner "is entitled to a determination whether the record evidence could support a finding of guilt beyond a reasonable doubt." *Moore v. Duckworth*, 443 U.S. 713, 714 (1979). However, the petitioner is entitled to habeas relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *See Brofford v. Marshall*, 751 F.2d 845, 856 (6th Cir. 1985).

When reviewing a jury's verdict under a sufficiency of the evidence standard, a court must consider all the evidence in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. at 319. Witness credibility is an issue to be left solely within the province of the jury, *Deel v. Jago*, 967 F.2d 1079, 1086 (6th Cir. 1992); *United States v. Schultz*, 855

F.2d 1217, 1221 (6th Cir. 1988), and substantial deference should be given to the trier of fact. *United States v. Ayotte*, 741 F.2d 865, 867 (6th Cir. 1984). "[T]he federal court sitting in habeas should not attempt to substitute its own opinion for that of the jury which convicted the petitioner." *York v. Tate*, 858 F.2d 322, 329 (6th Cir. 1988). A conviction should be affirmed if *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986), *aff'd*, 483 U.S. 171 (1987).

In considering Caldwell's claim of insufficient evidence to support the conviction, the Tennessee Court of Criminal Appeals found as follows:

> In his brief, the defendant argues that the evidence is legally insufficient to support his conviction, because (1) there is no physical evidence linking him to the murder; (2) the testimony of Diana and John Atkins was untrustworthy; and, (3) he was convicted on the uncorroborated testimony of Diana Adkins, who was an accomplice.

> There is no requirement that to convict, the State must produce physical evidence linking a defendant to a crime. However, in the present case, there was an abundance of physical evidence linking the defendant to the offense. Human blood was found on the defendant's blue jeans, under shirt, and socks worn on the day of the murder. A shoe print, found on a peanut jar in the victim's bedroom, was consistent with the pattern of the defendant's tennis shoes.

> The credibility of Diana Adkins and John Adkins has been settled by the jury. This court does not weigh evidence.

> Whether Diana Adkins was an accomplice was a jury question. Moreover, the testimony of Diana Adkins was abundantly corroborated by the defendant's confession to John Adkins, the human blood found on the defendant's clothing, and the evidence concerning his tennis shoes.

> We find sufficient evidence upon which any rational trier of fact could
> have found the essential elements of both offenses beyond a reasonable doubt.
> We find no merit in the defendant's issue.

*State v. Caldwell*, slip op. at 4-5, 1988 WL 94393 at *2 (citations omitted).

As noted earlier, this court has reviewed the transcript of Caldwell's trial and finds the

decision by the Tennessee Court of Criminal Appeals is supported in the record.  This court

thus concludes that the appellate court's determination that the evidence was sufficient to

support the first degree murder conviction was neither contrary to, nor did it involve an

unreasonable application of, federal law as established by the U.S. Supreme Court in *Jackson*

*v. Virginia*.  Accordingly, Caldwell is not entitled to habeas relief on this issue.


VI.    <u>Conclusion</u>

Petitioner Caldwell is not entitled to habeas corpus relief and for that reason the

respondent's motion to dismiss will be **GRANTED**.  Caldwell having failed to make a

substantial showing of the denial of a constitutional right, a certificate of appealability

**SHALL NOT ISSUE**.  28 U.S.C. § 2253(c).  The court **CERTIFIES** that any appeal from

this action would not be taken in good faith and would be totally frivolous.  *See* Rule 24 of

the FEDERAL RULES OF APPELLATE PROCEDURE.


**AN APPROPRIATE ORDER WILL ENTER.**


          <u>     s/ Thomas W. Phillips     </u>
          United States District Judge